United States District Court
Southern District of Texas
**ENTERED**
November 17, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| FELICIA VIRGIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-3238 |
| | § | |
| SAIA MOTOR FREIGHT LINE, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the Court[1] are Defendant SAIA Motor Freight Line, LLC's ("Saia") Motion for Summary Judgment (ECF No. 17), Plaintiff Felicia Virgin's ("Virgin") Motion for Leave to File Continuance and Extension of Deadlines (ECF No. 18), and Motion for Leave to File First Amended Complaint (ECF No. 19). Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Virgin's Motion for Leave to File First Amended Complaint (ECF No. 19) be **DENIED** and **ORDERS** Virgin's Motion for Leave to File Continuance and Extension of Deadlines (ECF No. 18)

---

[1] On August 18, 2025, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 21).

be **DENIED as MOOT**.  Further, the Court **RECOMMENDS** SAIA's Motion for Summary Judgment (ECF No. 17) be **GRANTED**.

## I.    Background

### A.    Factual Background

In early June 2022, Virgin was hired as a commercial driver by Palletized Trucking, LLC ("Palletized Trucking") and assigned to haul and deliver loads packed into Saia-owned trailers pursuant to an agreement between Palletized Trucking and Saia.[2]  (ECF No. 6-1 at 7; ECF No. 17 at 2, 5; ECF No. 17-1 at 7, 25–26).

Virgin obtained her commercial driving license through a formal truck-driving school and had several years of experience as a commercial tractor-trailer driver when she was hired by Palletized Trucking.  (ECF No. 17 at 6; ECF No. 17-1 at 20–25).  Upon being hired, she underwent training that included ride-alongs, supervised driving, route handling, deliveries, using the Palletized Trucking job-related hand-held device, and performing pre- and post-trip inspections.  (ECF No. 17 at 6; ECF No. 17-1 at 28–33).  At all relevant times, Palletized Trucking trained and supervised Virgin, and Virgin was operating under the motor carrier authority of Palletized Trucking as its

---

[2] On December 16, 2024, the Court granted Saia's Motion for Leave to Designate Palletized Trucking as a Responsible Third Party.  (ECF No. 15).

employee. (ECF No. 17 at 5–6; ECF No. 17-1 at 9–10, 13–15). As a licensed commercial operator, Virgin had an independent duty to inspect the equipment she was using and operating. (ECF No. 17 at 5; ECF No. 17-1 at 60–66). Virgin had no direct relationship with anyone at Saia regarding the condition of Saia's trailer, as she often communicated through Palletized Trucking's dispatch. (ECF No. 17 at 5–6; ECF No. 17-1 at 60–69).

On June 24, 2022, approximately three weeks after she was hired, Virgin was injured when a rolling door on a Saia-owned dry van trailer, that she was hauling, came down unexpectedly on her hand. (ECF No. 17 at 4; ECF No. 17-1 at 25). On that day, prior to her injury, Virgin conducted an audit of the trailer contents and performed a pre-trip inspection of the Palletized Trucking tractor and Saia trailer. (ECF No. 17 at 6; ECF No. 17-1 at 44–48, 60–65). During the pre-trip inspection, Virgin filled out an inspection form and confirmed the trailer door "passed" as being safe and operational. (ECF No. 17 at 7; ECF No. 17-1 at 46–48; ECF No. 17-2 at 101–103). Virgin then proceeded on her route, made about eight to ten stops, and used the trailer door about sixteen times before her injury. (ECF No. 17 at 6–7; ECF No. 17-1 at 48–51, 55–60).

Following her injury, Virgin received benefits under Palletized Trucking's worker's compensation plan. (ECF No. 17 at 7). After her worker's

compensation claim was closed, Virgin obtained another commercial truck driving job that paid her more than her position with Palletized Trucking. (ECF No. 17 at 7–8; ECF No. 17-1 at 73–87).

### B.    Procedural Background

On June 5, 2024, Virgin filed her original petition against Saia in the 61st Judicial District Court of Harris County, Texas.  (ECF No. 6-1).  Virgin claims Saia breached its duty of care owed to Virgin by failing to reduce or eliminate the trailer door's risk of harm to anyone unloading the trailer and failing to warn anyone unloading the trailer to use extra care when unloading. (*Id.* at 7).  Virgin also claims Saia was negligent in failing to repair the trailer door to make unloading the trailer safe.  (*Id.*).  For relief, Virgin "seeks monetary relief over $250,000 but not more than $1,000,000."  (*Id.* at 6).

Virgin served Saia on July 29, 2024.  (*Id.* at 10).  Saia timely removed the case on August 28, 2024 based on diversity jurisdiction.  (ECF No. 1).  Saia filed an amended notice of removal on September 25, 2024, pursuant to the Court's Order for Initial Conference and Disclosure of Interested Parties.  (ECF Nos. 4, 6).

On September 30, 2024, the Court issued a Docket Control Order, setting a deadline of November 1, 2024 for amended pleadings, a July 25, 2025

deadline for completion of discovery, and a September 5, 2025 deadline for filing pretrial motions. (ECF No. 10).

On June 10, 2025, Saia took Virgin's oral/videotaped deposition. (ECF No. 16). Virgin did not undertake any discovery.

On August 28, 2025, Saia filed a motion for summary judgment as to all of Virgin's negligence claims. (ECF No. 17). Virgin filed a response (ECF No. 20) and both her motions for leave to file a first amended complaint and for continuance and to extend deadlines on September 17, 2025, the day before the response to Saia's motion for summary judgment was due (ECF Nos. 18–19).

## II.    Discussion

In the continuance motion, Virgin requests additional time to conduct discovery and disclose experts. (ECF No. 18). To show good cause, Virgin explains that "due to a miscommunication and turnover of staff," the deadlines "were not placed on Plaintiff's counsel's calendar." (*Id.* at 1). Virgin "seeks relief to designate Ruel [sic] 26(a) Experts to prove up the injury and damages in her complaint" and to avoid a situation where the "exclusion of an expert witness for failure to comply with discovery deadlines" results in dismissal of her case. (*Id.* at 2).

In the motion for leave to amend, Virgin states that she "is not aware of any set deadline for amending pleadings in this matter."[3]  (ECF No. 19 at 2). Citing Federal Rule of Civil Procedure ("Rule") 15(a), Virgin seeks leave to amend to "correct[] the amount of damages that [she] is seeking for lost wages in the past."  (*Id.*).  Specifically, Virgin wishes "to include the amount paid by [her] Worker's Compensation (75%) and the amount of income lost above that amount." (*Id.*).  According to Virgin, Saia will not suffer any prejudice because "[t]he proposed amended complaint does not involve the addition of any new defendants, set forth any new claims, or raise any new legal theories." (*Id.*).

Saia responded to both motions.  (ECF Nos. 23–24).  In its responses, Saia contends Virgin's motions should be denied because she fails to show good cause to amend the Court's scheduling order.  As to the continuance motion, Saia argues "[Virgin] makes no attempt to provide a reasonable or particularized explanation for her failure to timely identify witnesses or the importance of any one witness' expected testimony, or her request to re-open discovery that has been closed for some time."  (ECF No. 23 at 4).  Saia also points out that although Virgin cites turnover with her counsel's staff and calendaring issues, her counsel "participated in the Rule 16 conference and

---

[3] *Cf.* ECF No. 10 (scheduling that motions to amend the pleadings be due by November 1, 2024).

signed off on the Joint Discovery and Case Management Plan." (*Id.* at 5; *see also* ECF Nos. 7, 10). As to the motion to amend, Saia argues that Rule 16(b)—instead of Rule 15(a)—governs amendment of pleadings after a scheduling order's deadline to amend has expired and that Virgin's request "is almost a year past the scheduling order deadline" and "[Virgin] offers no explanation for the failure to timely move for leave to amend or the importance of the amendment." (ECF No. 24 at 2–3). Saia further argues that granting Virgin's motions will prejudice Saia "in the form of unnecessary protraction of this matter, delay, and expense," and the motions are dilatory attempts to avoid Saia's pending Motion for Summary Judgment and to unnecessarily prolong this case. (ECF No. 23 at 6; ECF No. 24 at 3).

## A.    Virgin's Motion for Leave to File Amended Complaint

As stated above, Virgin requests leave to amend her complaint so that it may "reflect the true amount to which Plaintiff seeks to be compensated." (ECF No. 19 at 2). According to Virgin, by granting leave to amend, "the action can more effectively proceed on the merits," and defendants will not suffer any prejudice. (*Id.*).

### 1.    Legal Standard

Rule 15(a) provides that a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). While not

7

automatic, federal policy "is to permit liberal amendment to facilitate the determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Carter v. H2R Rest. Holdings, LLC*, No. 3:16-cv-1554, 2017 WL 1653622, at *2 (N.D. Tex. Apr. 3, 2017), *report and recommendation adopted*, No. 3:16-cv-1554, 2017 WL 1608751 (N.D. Tex. Apr. 28, 2017) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). "The language of Rule 15(a) 'evinces a bias in favor of granting leave to amend,' and the Court must have a 'substantial reason' for denying such a request." *Amaru Ent., Inc. v. Brent*, No. 3:22-cv-2677, 2023 WL 3575562, at *2 (N.D. Tex. May 19, 2023) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).

Courts consider factors such as "undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party" when determining if there is a substantial reason for denying a motion to amend. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999). "[S]tandards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, [thus], the Court must [initially] determine . . . whether the motion was filed before or after the deadline." *Carter*, 2017 WL 1653622, at *2.

When a party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) provides that a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).

However, when a party seeks to file an amended pleading after the scheduling order deadline for such amendments has passed, the party must meet the more stringent requirements of Rule 16(b) before the Court can apply the liberal Rule 15 standard. *See Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 561 (W.D. Tex. 2012) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Courts in the Fifth Circuit determine good cause by analyzing the following factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the

9

potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *See S&W Enterprises*, 315 F.3d at 536. Ultimately, a party must "give a persuasive reason why the dates originally set by the scheduling order . . . could not reasonably be met despite the diligence of the party seeking the extension." *Argo v. Woods*, 399 F. App'x 1, 3 (5th Cir. 2010) (internal quotations omitted).

### 2.    Analysis

Here, pursuant to the Court's Scheduling Order, the deadline to amend pleadings was November 1, 2024. (ECF No. 10 at 1).  Virgin filed her Motion for Leave to File a First Amended Complaint on September 17, 2025, well after the deadline passed. (ECF No. 19).  Therefore, Virgin must meet the more stringent requirements of Rule 16(b) before the Court applies the more lenient Rule 15(a) standard.

As noted by Saia, Virgin does not address the Rule 16(b) standard in her motion.  (*See* ECF No. 19; ECF No. 24 at 2).  Virgin also did not file a reply.

First, concerning the explanation for failure to timely move for leave to amend, Virgin fails to articulate any explanation for her failure to timely file under Rule 16.  Curiously, Virgin states her "request is being filed within the time frame set by the Court for amending pleadings" (ECF No. 19 at 2), which, as noted above, is incorrect.

10

Second, concerning the importance of the amendment, Virgin merely states the amendment is "to include the amount paid by Plaintiff's Workers' Compensation (75%) and the amount of income lost above that amount. In so doing, the action can more effectively proceed on the merits."[4] (*Id.*).

Third, concerning the potential prejudice in allowing the amendment, Virgin states "defendants will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment. The proposed amended complaint does not involve the addition of any new defendants, set forth any new claims, or raise any new legal theories." (ECF No. 19 at 2). Conversely, Saia argues that Virgin's "almost year-late request for leave to amend her pleadings, which is well outside the expired discovery period and expert designation deadlines, will certainly prejudice [] Saia in the form of unnecessary protraction of this matter, delay, and expense." (ECF No. 24 at 3). The Court acknowledges that Saia also notes "that the proposed amended pleading was filed almost 1 year after the scheduling order deadline" and on

---

[4] Virgin's original petition states she seeks damages in the amount of $500,000 for personal injuries and $50,000 for lost wages (ECF No. 6-1 at 8); whereas in her proposed amended complaint attached to her motion, she seeks damages in the amount of $500,000 for personal injuries and $148,000 for lost wages (ECF No. 19-1 at 4). The Court finds that this amendment affects Virgin's prospects of ultimate recovery and thus is arguably important. *See Hammond v. United States*, No. 1:21-cv-686, 2023 WL 8113860, at *3 (W.D. Tex. June 6, 2023) ("Amendments are considered important when they 'potentially provide additional grounds for [a party] to recover' or 'directly affect [a party's] prospects of ultimate recovery.'" (citing *AFS Logistics, LLC v. Tetria Glob. Logistics*, No. 4:21-cv-1086, 2022 WL 3904697, at *2 (N.D. Tex. May 11, 2022))).

"the eve of Saia's pending Rule 56 Motion for Summary Judgment docket date."
(*Id.*).  *See Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) ("This court has frequently found prejudice when a party seeks leave to amend after the opposing party has filed a motion for summary judgment. . . . '[t]o grant leave to amend is potentially to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint.'") (citation modified).

Fourth, a continuance is not available to cure the prejudice.  Saia has already filed a Motion for Summary Judgment (ECF No. 17), and the pretrial motion deadline expired on September 5, 2025 (ECF No. 10).  Saia would therefore have to overcome additional delay and expense to cure any potential prejudice that would result from Virgin's amendment.

Given the four factors, the Court finds Virgin has failed to show good cause.  *See Meekins v. Foster*, No. 98-cv-2047, 1999 WL 299019, at *1 (E.D. La. May 11, 1999) ("[U]ntimeliness alone [is] a sufficient reason to deny leave to amend, 'especially when the party filing the motion has no adequate explanation for the delay.'" (citing *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994))); *see also Murray v. Neff Rental, Inc.*, No. 08-cv-471, 2009 WL 3109880, at *2 (W.D. La. Sept. 28, 2009) (denying leave to amend an answer where the party "cited no reasonable explanation for his failure to

12

timely request amendment"); *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 328 (5th Cir. 2012) (noting a court denied a motion to amend answer without prejudice where the party did not address the appropriate legal standard). Because Virgin fails to meet the requirements of Rule 16(b), the Court need not address the Rule 15(a) standard. *See Comput. Acceleration Corp. v. Microsoft Corp.*, No. 9:06-cv-140, 2007 WL 2315223, at *4 (E.D. Tex. Aug. 10, 2007) (deciding that given good cause did not exist under Rule 16(b), the court would not reach the question of whether an amendment would have been allowed under Rule 15(a)). As such, the Court recommends Virgin's Motion to for Leave to File a First Amended Complaint be denied. (ECF No. 19).

### B.   Saia's Motion for Summary Judgment

Saia moves for summary judgment on Virgin's claims, whether under a negligence or strict liability theory, and argues Virgin has no evidence to support damages for lost wages and earning capacity, nor for past and future medical expenses. (ECF No. 17 at 2–3). Virgin responds to Saia's motion arguing that, assuming discovery is reopened, she intends to designate witnesses and experts to substantiate her claims and damages. (ECF No. 20 at 4–5). Virgin contends she "*will demonstrate* the negligence of Saia in not warning [Virgin] and other drivers of the dangerous condition of the rear door of the trailer in question" and the Court should deny Saia's motion for

13

summary judgment "as there are material issues *to be determined* by a trier of facts." (ECF No. 20 at 5) (emphasis added). For evidence in opposition, Virgin relies on her own deposition and the affidavit of another Palletized Trucking employee. (ECF Nos. 20-1; 20-2).

### 1.  Legal Standard

Motions for summary judgment are governed by Rule 56. Rule 56(a) instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view

the evidence in a light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505. The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525

15

(5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).  Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

### 2.  Analysis

#### a.  Negligence

Saia argues they are entitled to summary judgment on Virgin's negligence claim because Virgin has no evidence to support that (1) Saia owed her a duty of care; (2) even if a duty was owed, that Saia breached it; and (3) such a breach was the proximate cause of her injuries and damages.  (ECF No 17 at 8).

The Court shall apply Texas law.  *See Mack v. RPC, Inc.*, 439 F. Supp. 3d 897, 901 (E.D. Tex. 2020); *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) ("A federal court sitting in diversity applies the substantive law of the forum state.").  The elements of a negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). The threshold inquiry in a negligence case is duty.  *Id.*; *Mack*, 439 F. Supp. 3d at 901 ("In Texas, when a plaintiff sues in negligence, the 'threshold inquiry' is

whether the defendant owed the plaintiff a duty of care." (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995))). The existence of duty "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Elephant Ins. Co.*, 644 S.W.3d at 145. A person owes a duty of care to another person only if that duty arises out of a limited set of "special relationships or circumstances." *Mack*, 439 F. Supp. 3d at 901 (analyzing relationship and duty between parent corporation and the employees of its subsidiary). The duty inquiry involves evaluating the factual situation presented "in the broader context of similarly situated actors." *Elephant Ins. Co.*, 644 S.W.3d at 145. Often "the material facts are either undisputed or can be viewed in the light required by the procedural posture of the case." *Id.* at 146. The facts surrounding the event in question may be "largely undisputed and, to the extent they are not, can be viewed, as the summary-judgment standard requires, in the light most favorable to [Virgin]." *Id.*

Here, the central dispute and the controlling issues involve the existence and scope of a duty—that is, whether Saia owes a duty to Virgin that applies to the factual situation presented. Saia primarily contends Virgin "has no evidence to support the proposition that Saia breached an industry-recognized duty owed to [Virgin] regarding the alleged defective condition of its trailer

17

door." (ECF No. 17 at 9). Saia relies on two cases for the proposition that expert testimony is required to establish the standard of care Saia owed to Virgin regarding the use of Saia's trailer door, and without such evidence, Virgin's claim necessarily fails as a matter of law. (*Id.* at 9–10).

In the first case, *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84 (Tex. 2004), a truck driver who was injured in a tractor-trailer accident sued the freight company who owned the trailer he was hauling and that eventually became detached. *Id.* at 85–86. The trial court granted a directed verdict in favor of the company. *Id.* at 87. The court of appeals reversed and remanded for a new trial, holding among other things that expert testimony on the standard of care and breach was not necessary to establish negligence. *Id.* When the company sought further review, the Texas Supreme Court reversed; the court disagreed with the appellate court's finding that expert testimony was not necessary on the standard of care. *Id.* at 89–91. The court reasoned that the upper coupler assembly, kingpin, and base rail of the refrigerated trailer were specialized equipment outside the experience of the layman. *Id.* at 91. The court therefore held expert testimony was required to establish whether the trucking company breached a standard of care in leasing the trailer that allegedly had rusty bolts connecting parts of the trailer to the driver's tractor. *Id.*

In the second case, *Simmons v. Briggs Equip. Tr.*, 221 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2006, no pet.), a rail-car mover operator sued an equipment company for negligence in the maintenance and repair of a rail-car mover he was operating that caught on fire. *Id.* at 111–12. The operator claimed that the equipment company breached its legal duty to inspect and/or repair any hoses in the rail-car mover prior to the fire. *Id.* at 112. The equipment company filed a no-evidence summary judgment motion, asserting that there was no evidence that it owed the operator a legal duty, that it breached any duty to maintain and/or service the rail-car mover, or that any breach proximately caused the operator's injury. *Id.* The state court granted summary judgment in favor of equipment company, and the operator appealed. *Id.* On appeal, the court held that the trial court did not err, because the operator needed expert testimony regarding the appropriate standard of care and whether the equipment company's conduct met that standard, reasoning that the maintenance and service of a rail-car mover involved specialized equipment and techniques unfamiliar to a lay person. *Id.* at 113–15. The court therefore concluded that because the operator did not provide probative expert testimony regarding the appropriate standard of care, he failed to raise a fact issue as to the breach of duty element necessary to support his negligence claim. *Id.* at 15.

19

Saia argues that because Virgin likewise has no probative expert testimony regarding the appropriate standard of care, Virgin does not raise a fact issue as to the breach of duty element necessary to support her negligence claim. (ECF No. 17 at 10).

In response, Virgin argues that if leave of court is granted, she will designate multiple experts who she believes will give testimony regarding her injury, her disability, and her inability to work after this incident. (ECF No. 20 at 5). However, Virgin does not address or provide evidence for the appropriate standard of care. As such, the Court finds Virgin does not raise a fact issue as to the breach of duty element necessary to support her negligence claim. *See Robison v. Cont'l Cas. Co.*, No. 22-40071, 2022 WL 17819601, at *5 (5th Cir. Dec. 20, 2022) (affirming district court's grant of summary judgment in favor of defendant where plaintiffs did not have a viable negligence claim because they failed to provide expert testimony regarding breach in performing a boiler inspection); *Trevino v. Jimenez*, No. 4:17-cv-1092, 2018 WL 8733112, at *11 (S.D. Tex. July 11, 2018) (granting defendant summary judgment on plaintiff's negligence per se claims based on defendant's alleged violation of regulations pertaining to the maintenance of commercial trucks because plaintiff failed to produce required expert testimony); *Camacho v. Schindler Elevator Corp.*, No. 13-cv-1091, 2014 WL 7157127, at *3 (W.D. Tex. Dec. 15,

2014), *report and recommendation adopted sub nom. Camacho v. Schindler Elevator Corp. & All Other Entities Doing Bus. as Schindler Elevator*, No. 13-cv-1091, 2015 WL 11281554 (W.D. Tex. Mar. 31, 2015) (recommending granting defendant summary judgment on plaintiff's common law negligence claim because plaintiff failed to present expert testimony showing that defendant breached its duty to properly maintain escalator). Saia is therefore entitled to summary judgment on Virgin's negligence claim.

      b. <u>Strict Liability</u>

Saia argues they are entitled to summary judgment on Virgin's strict liability claim because the trailer at issue was not a product in the stream of commerce. (ECF No. 17 at 8–9). To that end, Saia also cites *Fulgham*, which held the freight company was not strictly liable for the injuries sustained by the driver when the company's trailer detached from driver's tractor. 154 S.W.3d at 88–89. There, the court concluded strict products liability was inapplicable because the company was not in the business of selling or leasing its trailers but rather provided the trailer to the driver as an independent contractor solely for accomplishing the company's business purposes. *Id.*

Here, there is no evidence Saia engaged in the business of introducing the trailer at issue into the channels of commerce, and Virgin does not argue to the contrary in her response to Saia's summary judgment motion. *Cf.*

21

*Fulgham*, 154 S.W.3d at 88 ("To incur strict liability in Texas, 'it is not necessary that the defendant actually sell the product, but only that he be engaged in the business of introducing the product into the channels of commerce.'" (citing *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978))).  Indeed, this case does not present a situation where there has been a sale of a product by a manufacturer; instead, Saia furnished its trailer to a Palletized Trucking employee to accomplish its business purposes.  *See Fulgham*, 154 S.W.3d at 88 ("[W]e have declined to apply strict liability where 'there has been no sale of the product by the manufacturer but a bailment for mutual benefit,' when the product bailment was to an employee of an independent contractor of the bailor for the sole purpose of accomplishing the bailor's business purposes."); *id.* ("A company that gratuitously furnishes a product solely to accomplish its own business purposes is liable for negligence but not strict liability.") (citations omitted).  Accordingly, the Court concludes that Virgin's strict liability claim fails, and Saia is entitled to summary judgment on that claim.  *See also Greene v. Toyota Motor Corp.*, No. 3:11-cv-207, 2014 WL 12575959, at *4 (N.D. Tex. May 5, 2014) (granting summary judgment for moving company on plaintiffs' strict products liability claim for moving truck's alleged defect during traffic accident because moving company did not place the trailer into the stream of commerce).

Because the Court finds Saia is entitled to summary judgment on all of Virgin's claims, the Court need not reach the issues regarding injury and damages. *See Levantino v. Gateway Mortg. Grp.*, No. 3:20-cv-366, 2020 WL 5815914, at *4 (N.D. Tex. Sept. 30, 2020) ("[T]he court need not address whether Plaintiff sufficiently pleaded allegations supporting damages, as she fails to sufficiently plead allegations with respect to the second and third elements of the claim."); *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 546 (S.D. Tex. 2011) (granting defendant summary judgment on plaintiff's breach of fiduciary duty claim and explaining the court need not examine the second and third elements of such claim (whether a breach occurred and whether plaintiff was injured or defendant benefited) where the plaintiff failed to establish the first element).

### C.   Virgin's Motion for Continuance and Extension of Deadlines

In light of Saia's Motion for Summary Judgment adequately disposing of all of Virgin's claims, the Court denies Virgin's Motion for Continuance and Extension of Deadlines as moot. (ECF No. 18). To be sure, in addition to being untimely, Virgin makes no effort to show how a continuance and extension of deadlines would defeat the summary judgment motion. Because Virgin relies on vague assertions regarding the need for additional discovery, she has failed to show that the additional discovery would defeat the summary judgment

motion.  *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) ("The nonmoving party must show how the additional discovery will defeat the summary judgment motion . . . and 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'") (internal citation omitted).

## III.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Virgin's Motion for Leave to File First Amended Complaint (ECF No. 19) be **DENIED**, and **ORDERS** Virgin's Motion for Leave to File Continuance and Extension of Deadlines (ECF No. 18) be **DENIED** as **MOOT**.    Further, the Court **RECOMMENDS** SAIA's Motion for Summary Judgment (ECF No. 17) be **GRANTED** and all of Virgin's claims be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on November 17, 2025.

Richard W. Bennett
United States Magistrate Judge